State ex rel. v. Follis.

STATE *ex rel.* STEWART, State Revenue Agent, *v.* D. J. FOLLIS *et al.*

SAME *v.* D. M. COLLINS *et al.*

(*Nashville.* December Term, 1917.)

1. **COUNTIES. State Revenue Agent. Authority. "Charged."**

Acts 1907, chapter 602, sections 71, 77, confer on State revenue agents power of investigating the State of any trustee's official accounts, whether in office or out, for the purpose of ascertaining whether he has duly collected and accounted for State and county revenue, the word "charged" as used in the later section meaning charged at the time the default or failure of duty occurred. (*Post, pp.* 516-518.)

Acts cited and construed: Acts 1907, ch. 602, secs. 71, 77.

2. **STATUTES. Construction.**

Sections 71 and 77 of Acts 1907, chapter 602, must be construed together, since the latter section creates the office of state revenue agent and, in the main, defines his duties, while the former also imposes duties. (*Post, pp.* 516-518.)

3. **COUNTIES. Joint and several liability of surety.**

In bill by State revenue agent against a former county trustee and a part of sureties on his official bond, defendant sureties cannot complain that certain of their cosureties, although mentioned in the bill, were not made defendants, since, under Shannon's Code, section 4486, all joint obligations are made joint and several. (*Post, pp.* 518, 519.)

Acts cited and construed: Acts 1789, ch. 57, sec. 5.

Cases cited and approved: Voochies v. Dickson, 33 Tenn., 348; Prowell v. Fowlkes, 64 Tenn., 649; Rice v. Kirkman, 22 Tenn., 415; Gibson v. Martin, 26 Tenn., 127; Derrick v. State, 71 Tenn., 396; Garrison v. Hollins, 70 Tenn., 684, 685.

Codes cited and construed: Sec. 4486 (S.).

140 Tenn.—33

4. **EVIDENCE. Secondary evidence. Report of accountants.**

Since it would have been wholly impracticable to conduct an investigation as to condition of accounts of defendant county trustee in open court, or in the master's office, a written report of accountants, appointed to investigate and report upon condition of accounts of defendant, were competent evidence, although not conclusive. (*Post, pp.* 519-522.)

Cases cited and approved: Burton v. Driggs, 20 Wall., 125; Culver v. Marks, 122 Ind., 554.

5. **EVIDENCE. Documentary evidence. Authentication.**

Where an unidentified part of report of condition of accounts of defendant county trustee was made by persons who were not examined, and the witnesses examined made no test of such work, the whole report must be excluded. (*Post, pp.* 522-524.)

Case cited and disapproved: National Bank v. First Nat. Bank, 108 Tenn., 374.

6. **EVIDENCE. Report of accountants. Admissibility.**

That county had no power to make an appropriation for an investigation of the condition of accounts of defendant county trustee would not make inadmissible report of accountants appointed by county. (*Post, pp.* 524, 525.)

Cases cited and approved: State ex rel. v. Pollard, MS., Nashville, Dec., 1916.

7. **COUNTIES. Action against trustee.**

Since deputy revenue agent was on the ground, looked over report of condition of accounts of defendant county trustee made by accountants appointed by county, and was satisfied with it, contention that report was incompetent because investigation was not made personally by revenue agent, or his deputy in accordance with Acts 1907, chapter 602, as to investigation by revenue agent preliminary to suit, is without merit. (*Post, p.* 525.)

Acts cited and construed: Acts 1907, ch. 602.

8. **COUNTIES. Suit against trustee. Pleading.**

In suit against county trustee and sureties on his official bond for amounts alleged to be due State and county, bill containing

State ex rel. v. Follis.

only general allegations of indebtedness, without specifying errors in settlements made by trustee, pursuant to Acts 1907, chapter 602, sections 68-70, 76, or allegations that such settlements had not been made, *held*, insufficient to warrant relief; defect having been seasonably taken advantage of by answer setting up such settlements. (*Post, pp.* 525-533.)

Acts cited and construed: Acts 1907, ch. 602, secs. 68-70, 76.

Cases cited and approved:  State v. Buchanan, 52 S. W., 493; State v. Jefferson Turnpike Co., 22 Tenn., 305;  State v. Hamilton et. al., 30 Tenn., 47.

9. **ACCOUNT STATED.** Pleading.

Where complainant files a bill for a general account, and defendant sets forth a stated one, complainant must amend his bill, and by amendment surcharge and falsify the stated account. (*Post, pp.* 533, 534.)

10. **PLEADING.** Public records.

Accounts made by defendant county trustee, pursuant to Acts 1907, chapter 602, sections 68-70, 76, being of public record, *held*, set out with sufficient particularity in defendant's answer. (*Post, pp.* 533, 534.)

---

FROM GILES.

---

Appeal from the Chancery Court of Giles County. —Hon. WALTER S. BEARDEN, Chancellor.

STEWART WILKES, ESLICK & ESLICK and JOHN T. ALLEN, for appellant.

WOODWARD & WADE, for appellees.

MR. CHIEF JUSTICE NEIL delivered the opinion of the Court.

The transcript embraces the record of two separate suits, but inasmuch as the questions presented in

the two cases are the same, in the main, they were tried together in the chancery court, and have been so tried here. We shall dispose of the Follis case.

The bill in the Follis case was filed by Hoyte Stewart, State revenue agent, against Follis, former trustee of Giles county, and a part of the sureties on his several official bonds, to recover amounts alleged to be due the State and the county. Relief was denied the State, but the bill, as to this matter, was dismissed without prejudice. Other facts will be stated in immediate relation to the points below discussed.

A decree was rendered in favor of the county for one thousand, eight hundred and fifty-nine dollars and fifty-seven cents, and costs of suit, against Follis and his sureties. From this decree the defendants appealed, and have assigned errors. There was also a decree against Collins and his sureties for a larger amount and for the costs of that cause. Collins and his sureties have likewise appealed.

The State appealed from the judgment dismissing the bills as to its claims for a recovery in its personal right.

The first point we shall consider is presented by one of the assignments of error in the following language:

"The bill should have been dismissed, because the revenue agent has no powers other than those conferred by statute. His only power, as to bringing

suits against a delinquent officer, is against the officer while in office. He has no power to bring to account officers after the expiration of their terms.''

Follis' term of office expired in 1912. The present suit was brought on April 1, 1916. The point made involves the construction of Acts of 1907, chapter 602, sections 71, 77. The latter section creates the office of State revenue agent, and, in the main, defines his duties, but section 71 also imposes duties on this officer, and the two must be construed together. Both sections make it his duty to bring suit for revenue due from delinquent trustees, the latter in clearer terms conferring the power in respect of county revenue. There is language in section 77 which seems designed to cover only the case of a trustee while still in office; but there is other language in the same section which is broad enough to embrace any trustee who was charged with the duty of collecting State and county revenue, and failed in his duty while so charged. ''They (the revenue agents) shall have the right to bring suit by motion or otherwise against any delinquent revenue collector, or other officer, in the name of the State upon order of the comptroller, or upon their own motion, for any State, school, or county revenue. . . . They shall also have the authority to investigate any claims of the State or county for revenue due, and shall bring suit for the same as above.'' Under section 71, subsection 1, ''a motion or suit

lies in favor of the State, county, corporation, or
municipality, against the trustee and his sureties
on his official bonds for any moneys in his hands,
officially, not paid over, or accounted for according
to law, or for failure to collect." The next sub-
section mentions the State revenue agent as the
person to bring suits in favor of the State, and in its
name. In view of the broad provisions quoted and
referred to, we are of the opinion that it was the
purpose of the general assembly to confer on the
State revenue agents the power of investigating the
State of any trustee's official accounts, whether in
office or out, for the purpose of ascertaining whether
he had duly collected and paid over all State and
county revenue that he should have so collected and
accounted 'for. To give the words ''charged with
the collection and disbursement of State and county
revenue'' the meaning assigned thereto by the de-
fendants would be to confine them to so narrow a
scope that the purpose of the act would be largely
frustrated. We think the term ''charged'' means
charged at the time the default or failure of duty
occurred. The point made must therefore be overruled.

The sureties who are before the court assign for
error the fact that certain of their cosureties, al-
though mentioned in the bills, were not made de-
fendants along with them, or made parties to the
cause in any way, and that no reason was set forth
for this omission. This defense appears in the
answers and is true in fact. Is it sound in law?

The point would be well made if this were a motion, since relief in that form is confined within very narrow bounds, as being opposed to the course of the common law. *Voorhies* v. *Dickson,* 1 Sneed (33 Tenn.), 348; *Prowell* v. *Fowlkes,* 5 Baxt. (64 Tenn.), 649. Under this rule a motion against a sheriff and part of his sureties only was held bad in *Rice* v. *Kirkman,* 3 Humph. (22 Tenn.), 415; also a motion against a coroner and part of his sureties in *Gibson* v. *Martin,* 7 Humph. (26 Tenn.), 127; also a motion on a trustee's bond after the death of the principal in *Derrick* v. *State,* 3 Lea (71 Tenn.), 396, 398. But the restriction does not apply when suit is brought in the regular way, since under Shannon's Code, section 4486, all joint obligations are made joint and several. Under this section of the Code, taken from Acts of 1789, chapter 57, section 5, a suit against a sheriff and a part only of his sureties was permitted to stand. *Garrison* v. *Hollins,* 2 Lea (70 Tenn.), 684, 685. There is nothing, therefore, in the defense mentioned so far as concerns a proceeding of the kind before us.

It is objected that certain evidence which the chancellor admitted was incompetent. The substance of this matter is that Giles county employed O. R. Ewing & Co., a very competent firm of accountants, the senior member of which belonged at the time to our State board of accountants, to investigate and report upon the condition of Follis' accounts as trustee, and also those of Collins. The examination

was had and a report made. To complete the examination of Follis' accounts, covering two years, required three weeks; those of Collins, which covered two years and part of another year, required quite two months. It appears that in preparing the report as to Follis the accountants had to explore numerous books, large and small, appertaining to the office, and in addition thereto twelve thousand separate papers. The special facts on this head do not appear so distinctly in the evidence as to Collins, but the same number of books had to be inspected, and we have no doubt as many thousands of separate papers as those which appeared in the Follis matter. Having made these examinations the accountants wrote out their report, covering the two years of Follis and the two years of Collins and the fraction of another year, appropriately dividing and designating the items as to the two. This report is quite a book in itself, is very long, very minute, and very exact, embracing thousands of figures. It is obvious that it would have been wholly impracticable to conduct such an investigation in open court, or even in the master's office. If it could not be conducted substantially as it was, it could not be managed at all. It is objected that the original books and papers were themselves the best evidence, and that under the general rule on that subject they should have been introduced. But there is an exception which has been thus formulated:

"When the facts sought to be proved are of such a character, and the papers are so voluminous or numerous, that the examination thereof during the trial would consume much time, and it would be difficult for the jury" (and we may add for the court) "to understand and reach the necessary result, the rule requiring the production of the papers themselves is so relaxed that the court may, in its discretion, permit a competent witness, who has examined the papers with reference to the points sought to be established, to testify to the result of such examination." 2 Encyc. Ev., p. 284, citing cases from California, Connecticut, Iowa, Louisiana, Maryland, Minnesota, Missouri, Nebraska, and Texas.

This exception to the rule is also recognized in *Burton* v. *Driggs,* 20 Wall. (87 U. S.), 125, 136, 22 L. Ed., 299, 302, and in *Culver* v. *Marks,* 122 Ind., 554, 23 N. E., 1086, 7 L. R. A., 489, 495, 17 Am. St. Rep., 377. See, also, Jones on Ev., section 206; 1 Greenlf. Ev., section 93. There are numerous other authorities cited on complainant's brief, but those above mentioned are quite sufficient.

We may add that of course, such evidence when admitted is not necessarily conclusive. It is simply competent, and may be tested by the original evidence, the books, papers, etc., on which the experts may be cross-examined. In the case before us the experts were cross-examined at considerable length by counsel for the defendants, but with no effort to test the accuracy of their report by the original books or

papers. Indeed the defendants professed themselves overwhelmed by the vastness of the undertaking, and protested that they were unable to properly question the work done without the aid of an expert accountant of their own, which they said they were too poor to engage. But this could not change the principle of evidence.

It is urged that the report was inadmissible because three of the persons who took part in the examination were not introduced as witnesses to support it. The actual examination was made by Mr. Clark and Mr. Eaker, very competent and intelligent employees of O. R. Ewing & Co. Their work was superintended by Mr. Ewing himself. These three were fully examined and cross-examined. Mr. Clark's work covered a distinct part of the general task, that of Mr. Eaker, the residue, equally distinct. Mr. Clark was assisted a part of the time by Mr. Pierson and Mr. Smith, other employees of O. R. Ewing & Co. Mr. Eaker was assisted a part of the time by Mr. Smith, and a man whose name was nearly the same as his own, Mr. Eader. It is not shown what the qualifications of the latter were. Mr. Clark testified that he had confidence in Mr. Pierson and Mr. Smith, and that he tested the work of both and found it correct. It is not shown that the work of Mr. Eader, and Mr. Smith while serving under Mr. Eaker, was tested and found correct by either Mr. Eaker or Mr. Ewing himself. Neither Mr. Pierson or Mr. Smith, nor Mr. Eader, was ex-

aimed.  We are unable to ascertain from the record
to what extent work was done by them, or what part
of the work before us was their work.   Thus we
have not before us the witnesses who did all the
work.  We are sure the greater part of it was done
by Mr. Clark and Mr. Eaker, and that they were
thoroughly competent.   Their depositions show them
to be very intelligent men, and thoroughly candid and
fair. Mr. Ewing superintended the work in a general
way to see that his employees followed the correct
methods for this business, and now and then made
corrections when he conceived that mistakes had
been made, but he did none of the original work.
So it remains that a part of the work, an unidenti-
fied part, was done by witnesses, who not only were
not examined, but as to part of whom no test was
made by Mr. Eaker, under whom they were serving,
nor by Mr. Ewing.  That is to say, there is no evi-
dence of such test as the record now stands. As to
such parts, the exhibit must stand for itself, unsup-
ported by any witness.  If we could ascertain this
part, it could be segregated and the residue saved;
or, if there were sufficient evidence showing that Mr.
Eaker, the man in charge of Messrs. Smith and Eader,
tested their work and found it accurate, as did Mr.
Clark, for those who worked under him, this would
do.  That is to say, we should then be able to know
what figures were covered by the testimony of Mr.
Clark and what by Mr. Eaker.   But there is no
evidence showing such test of the work of Mr. Smith

and Mr. Eader. This being true, it leaves the whole matter fatally indefinite, and the whole report must be excluded. We do not think the case of *Continental National Bank* v. *First National Bank,* 108 Tenn., 374, 68 S. W., 497, cited by complainants' counsel, has any bearing on the question, further than that what is said on page 381 in respect of the power of the cashier of a bank to testify to the accuracy of the books of the bank supports what we have already said as to the right of Mr. Clark, having tested the work of those serving under him, to testify as to the accuracy of their work. The same authority indicates that similar evidence on the part of Mr. Eaker would support the work of those who served under him.

Another objection made was that Giles county had no power under the law to make an appropriation for such an investigation, and it is said the point had been so ruled in the unreported case of *State ex rel.* v. *Pollard,* MS. Nashville, Dec., 1916, in respect of Davidson county. Granted; but that is a matter wholly between the county and O. R. Ewing & Co., and defendants cannot make the question. The fact referred to did not make the report void, or nullify the evidence of those who testified to its correctness. In truth the evidence introduced is really that of the witnesses who made the examination. For convenience we refer to the report itself as an item of evidence, but it is manifest that it is such only in so

State ex rel. v. Follis.

far as it is an expression of the testimony of the witnesses themselves.

It is insisted that the evidence was incompetent because it does not appear that Mr. Hoyte Stewart, the revenue agent, or his deputy, Mr. Victor Sanders, personally made the investigation; the act (chapter 602, Acts of 1907) speaking, as it does, of an investigation by the revenue agent preliminary to a suit. There is nothing in this. Mr. Sanders was on the ground, looked over the report made by O. R. Ewing & Co. for the county, and was satisfied with it, and adopted it as stating the results of a careful examination. He did not make this adoption, however, until he had ascertained from both Mr. Follis and Mr. Collins that, though both were dissatisfied, they were unable to point out any error.

It is urged that the evidence is incompetent because complainants by its use are seeking to set aside stated accounts without proper pleadings. This subject is considered, not as a question of evidence, but as a question of pleading, in the next division of the opinion, and it need not be adverted to here, further than to say it was important as a question of evidence, though not essential, merely by way of a continued protest against the failure of the chancellor to require proper issues.

The last matter to be considered will now be stated. The substance of the contention arises out of the following points appearing in the pleadings and evidence. The bill was broadly based on the official

bonds of the trustee, alleging liability. in certain round aggregates thus:

"The said Follis has collected and failed to account for the following amounts for 1910 from September 1st, due Giles county, $623.70, and for 1911, $730.46; amount due the State of Tennessee for 1910, $60.67, and for 1911, $57.21."

The bill purported to file an itemized statement, showing the items composing these totals, but no such exhibit was in fact filed. There was no mention of any settlements made by the county trustee, and hence no attack thereon, nor is it alleged that no such settlements as the law requires had been made by the trustee. On this head the answer interposed the defense:

"That the defendant D. J. Follis, and the State of Tennessee, and Giles county, have made and stated 'a full and final account, and full and final accounts in writing, of all the matters and things referred to in the bill, which accounts were true and just, to the best of the knowledge and belief of these defendants, and the various balances due the State of Tennessee and the county of Giles were paid and settled by the said D. J. Follis, and the State of Tennessee and the county of Giles approved said accounts, and received the balances due from said D. J. Follis on said accounts, and thereupon gave the said D. J. Follis receipts and acquittance for the same, and said matters of account between said D. J. Follis, as trustee of Giles county, Tenn., and the

State of Tennessee and the county of Giles have been stated, approved, and ratified by the proper authorities that represented the State of Tennessee and the county of Giles, and all matters have been settled and account stated, as will be more fully shown hereinafter, and this bill cannot be maintained on account of such settlements and stated accounts.''

The testimony offered in support of the bill, consisting of a report of accountants who, years after Follis went out of office, had been employed by the county, purporting to show the items or particulars making up the totals sued for, along with the testimony of the witnesses who claimed to have gathered the material for the report and to have made it out, was objected to on the same ground, along with other grounds, and the objection was overruled by the chancellor.

The settlements were made substantially as stated in the excerpt quoted from the answer, and we infer, and this does not seem to be questioned, that Follis paid all that his settlements showed that he was owing. These settlements were made under the authority of Acts of 1907, chapter 602, sections 68-70, 76. These sections require the trustee to make monthly settlements with the comptroller of the State treasury, and also with the judge or chairman of the county court, also annual settlements. These settlements are to be reviewed by three ''revenue commissioners,'' selected by the county court to serve for a term of two years. It is especially provided

(section 76) that one of these commissioners shall be an expert accountant, and shall be selected as such. These commissioners are required to meet, on a designated day in January, April, July, and October of each year, "and critically examine the settlements of the judge or chairman of the county court, with all of the collecting officers of the county." It is their duty to inspect the reports of these collecting officers, made to the judge or chairman, and the books of those officers if necessary; also to carefully examine the financial report of the county judge or chairman, which is required to be made quarterly, and to be spread in full on the minutes of the county court; to examine the checks and warrants on which disbursements from the treasury have been made, and compare them with the books of the trustee. It is their duty to ascertain whether the balances as stated in the report of the county judge or chairman correspond with the balances shown to be on hand by the books of the trustee "and exhibit of the cash or assets which he has or should have on hand. It is also their duty to report in writing at the end of each quarter the result of their investigation, and it shall be their special duty to call attention to any neglect or violation of duty which they may observe on the part of any official."

The county judge of Giles county, when he made his settlements with Follis, had access to all of the records and papers of the office of that official; likewise the revenue commissioners when they re-

viewed those settlements; also the county court itself when those settlements were reported to and approved by it. That court, also the county judge, and the revenue commissioners had before them extended and minute reports, made from time to time, as required by law, by the trustee, and spread upon the minutes and approved by the court, in which report, among other things, credits were claimed by the trustee, and when the report was passed upon by the county court these credits or such of them as the county court deemed proper, were allowed.

It is true that, by the express terms of the statute, none of these things will estop the county or the State from showing that error was committed, in the allowance of credits, "in the event that it should afterwards appear that such credit was improperly allowed." Section 69. But surely any one claiming such error should be required to point it out specifically.

We do not say what form of proceeding should be adopted in the county court, when these matters are current. That question does arise here. But we are clearly of the opinion that, when the State and county, either or both, ask the aid of a court of equity to bring an alleged defaulting trustee to account, they should be held to know the existence of matters appearing on the public records of the county and State in which the default is alleged to have occurred, the settlements, reports, etc., and

should not be permitted to ignore such settlements. They are *prima-facie* bound by these settlements, just as any private individual is, having been made by their agents. *State* v. *Buchanan et al.* (Ch. App.), 52 S. W., 493; *State* v. *Jefferson Turnpike Co.*, 3 Humph. (22 Tenn.), 305; *State* v. *Hamilton et al.*, 11 Humph. (30 Tenn.), 47. Just as in the case of any private litigant, they would be compelled, in a court of equity, to file a bill to reopen the settlement for fraud, and have an accounting at large, or to specify the special errors or omissions of charge, or the improper credits allowed. In default of such pleading, when seasonably taken advantage of as in the case before us, the settlement must stand, and all relief be denied complainants.

It is objected, in opposition to this conclusion, that one form of action allowed by the act is a motion against the trustee and his sureties. It is argued that averments, or allegations, proper to raise issues of surcharge and falsification in a bill in equity, are wholly foreign to a motion. What should be included in such a motion we do not decide, because the question is not before us. But let it be conceded that such matters could not be rightly included within the body of a motion, directly or by way of exhibit thereto, still it does not follow that they should not be made the basis of a bill in equity, when relief is sought in that forum; nor does it follow that, in the face of a settlement had between the parties, any relief at all could be had by motion, or anywhere else except in equity.

We may add to what we have already said that, aside from all consideration of tenderness toward the officer himself, it would be a great hardship on his sureties, always friends, imperiling their private estates without any corresponding benefit to themselves, to permit settlements, made with so much apparent solemnity and anxious care, to be wholly disregarded or to go for naught. When such settlements have been made, the sureties have a right to rely upon them and rest at ease, unless attacked in a proper and circumstantial way.

It is objected that to enforce the requirements of pleading which we have mentioned will result in making the statute a dead letter. Surely not. If errors can be found for use in evidence, they can be used in framing a bill. Moreover, it appears from the testimony of Mr. Clark, and also of Mr. Eaker, that they based their investigations upon the annual settlements which the trustee had made with the county judge, ascertaining wherein he had omitted charges, made improper calculations, or allowed improper credits. It cannot be very difficult, with the aid of these accountants, to make proper specifications. At all events the rule we have stated is the correct one, and should be applied. What would be the result of a contrary view? Just the one before us. An officer who has made his settlement as required by law, duly approved by the constituted authorities, is assailed, along with his sureties, years afterwards, on a general allegation of

indebtedness in round totals, and called upon to defend himself and his sureties. His plea that he had already settled with the proper authorities, fully sustained by the evidence, is wholly disregarded and swept aside, and he is confronted with an *ex parte* report made by accountants, offered in evidence as a veracious result of an examination of the voluminous records of the office, and called upon to show wherein the experts have erred, a report formulated in a detached way as respects any relation to, or reference on its face to, the settlements formerly made. This *ex parte* report of the experts cost the county more than $3000. Obviously Follis would have to be an expert himself, or spend far more than he was sued for, to test by other experts the accuracy of the report. If the report had been made out with reference to omissions in the previous settlements, or errors therein, and these omissions or errors had been pointed out in the bill, the task of the defendants would have been much simplified. It may be that the county judge, who seems to have been a very capable man, and who died before the present bills were filed, was guilty of gross negligence in the matter of the settlements, that the revenue commissioners who reviewed the settlements, and members of the quarterly county court of Giles county who passed on and allowed a very large number of credits, were likewise all grossly negligent, or incompetent, but there is no allegation to that effect in the bills, and it does not seem fair to the

defendants that they should be deprived of the just protection which other persons in a similar station enjoy, nor that the complainants, though they be the State and the county, should be excused from the burden of other employers who have settled with their employees, servants, or agents.

The rule is clear that, where such settlements are pleaded, or a stated account, "it is a good bar to a bill for an account, for there is no rule more strictly adhered to in courts of equity than that, when a defendant sets forth a stated account, he shall not be obliged to go upon a general one." 1 Encyc. Pl. & Pr., 100, 101; Dan. Chy. Pl. & Pr., vol. 1, p. 666. And "where the complainant files a bill for a general account and the defendant sets forth a stated one, the complainant must amend his bill, and by the amendment he must surcharge and falsify the account." 1 Encyc. Pl. & Pr., pp. 101, 102. Such settlements as are pleaded in the answer fall well within the description of a stated account, and, being matters of public record made in obedience to a statutory requirement, needed not to be set out with more particularity than was employed in the answer. The references in the answer gave to the complainant adequate information as to the existence of these settlements and where they could be found.

The questions above considered and decided all appear with equal distinctness in the Collins Case.

The last point discussed being conclusive of the whole controversy as it now stands, we deem it un-

necessary to consider any other assignments than those we have already disposed of.

The chancellor's decree will be reversed in so far as a judgment was rendered in favor of the county against Follis and Collins and their sureties, and affirmed in so far as it dismissed the bills without prejudice to the State. The dismissal will be also without prejudice to the county in each case. Since the report of the experts seems to show a rather large amount due from Follis and his sureties, and a still larger amount due from Collins and his sureties, we do not think the inquiry should be foreclosed by a mere mistake in pleading, which can be easily remedied in another proceeding, if the State and the county choose to pursue the matter further.

In view of our anticipation that the State and the county will, or may, file new bills, we have disposed of several questions much according to the course pursued in cases where we reversed and remanded for a new trial, ruling on various points for the future guidance of the trial judge. We do not, in the present case, reverse and remand merely with directions to amend the pleadings, because the change required is so radical as to demand wholly new bills.

A judgment will be rendered against the State and Giles county for all of the costs of the cause.