EDWARD L. SLESINGER, Appellant, v. MRS. LOUISE WILLIS GLATT, Appellee.—373 S. W. (2d) 220.

Western Section. December 17, 1962.

Certiorari Denied by Supreme Court April 3, 1963.

Glascock, Miller, Collier & Field, Memphis, for appellant.

Matthews, Thompson, Matthews & Jones, Memphis, for appellee.

CARNEY, J. The complainant below, Edward L. Slesinger, a licensed real estate broker of Memphis, Shelby County, Tennessee, filed his original bill seeking recovery of $1,800.00 from the defendant, Mrs. Glatt, averring that she was the owner of two tracts or parcels of real estate located in Memphis, Tennessee, described in the bill; that the complainant was employed to find a purchaser for said properties; that the complainant thereafter found a purchaser, W. F. McLemore, at a price of $36,000.00 which was acceptable to the defendant and that a contract was entered into between the defendant

and said purchaser and that the defendant for reasons suitable to her failed and refused to consummate the transaction and refused to pay the complainant his commission of 5 per cent on the sale price.

The defendant by way of answer set up that one of the two tracts of land involved in the contract was subject to a lease with option to purchase in favor of the DX Sunray Oil Company; that the complainant was thoroughly familiar with the lease-option contract and that the contract entered into on July 10, 1961, between her and the purchaser, W. F. McLemore, expressly provided that the contract should become null and void if the DX Sunray Oil Company should exercise its right to purchase said parcel of land; that the DX Sunray Oil Company did exercise its right to purchase and therefore the defendant could not and did not consummate the contract with the purchaser, W. F. McLemore. Therefore, the defendant denied that the complainant was entitled to any commission or compensation.

Only the complainant, Edward L. Slesinger, testified. There was no other evidence submitted. The Chancellor heard the case on oral testimony.

His Honor the Chancellor was of opinion that since the complainant knew of the option held by the DX Sunray Oil Company that the complainant took a considered risk that the Oil Company would not exercise its option and that therefore the complainant was not entitled to the recovery of any commission from the defendant and dismissed complainant's bill. The complainant has prosecuted his appeal to this court and assigned error.

The appellant, Mr. Slesinger, has known Mrs. Glatt, the defendant, for a number of years and has represented

her as a real estate broker in the sale of several tracts or parcels of land other than the tract of land involved in this litigation. Mr. Slesinger was the agent who negotiated the lease to the DX Sunray Oil Company on parcel No. 2. He received a commission of $550.00.

This parcel of land is a service station and lot known as 2698 North Watkins Street, Memphis, Tennessee. On January 14, 1959, the defendant, Mrs. Glatt, executed a lease for a period of ten years to the DX Sunray Oil Company on the service station property which gave the lessee an exclusive option to purchase the demised premises under the following conditions to-wit:

"Lessor hereby grants to lessee the exclusive right, at Lessee's option, to purchase the demised premises free and clear of all liens and encumbrances, including leases, (which were not on the premises at the date of this lease) at any time during the term of this lease or any extension or renewal thereof, on the same terms and at the same price as any bona fide offer for said premises received by lessor and which offer lessor desires to accept. Upon receipt of a bona fide offer, and each time any such offer is received, lessor (or his assigns) shall immediately notify lessee, in writing, of the full details of such offer, including the name and address of any offerer, whereupon lessee shall have thirty (30) days after receipt of such notice in which to elect to exercise lessee's prior right to purchase. No sale of or transfer of title to said premises shall be binding on lessee unless and until these requirements are fully complied with."

Mr. Slesinger testified that he had an agreement with Mrs. Glatt that if he procured a purchaser for the prop-

erty that he would receive a commission therefor; both he and Mrs. Glatt were thoroughly familiar with the existence of the option to purchase held by the DX Sunray Oil Company. Further, Mr. Slesinger testified that Mrs. Glatt had told him that she had talked with the officials of DX Sunray Oil Company and apparently they were not interested in purchasing the property.

Over a period of six or seven months prior to July, 1962, the complainant, Mr. Slesinger, attempted to sell the property to several different persons. On January 16, 1961, he procured a signed offer to purchase from one S. C. Pearl at a price of $18,500.00, that is, purchase of parcel No. 2 which was covered by the service station property lease. Mrs. Glatt refused to accept this contract and refused to sign the same because she thought it was not enough.

On July 10, 1961, Mr. Slesinger procured the signature of one W. F. McLemore on a contract to purchase two parcels of land owned by the defendant, Mrs. Glatt, at a price of $8,500.00 for parcel No. 1 and $27,500.00 for parcel No. 2 which was covered by the lease to DX Sunray Oil Company. Mrs. Glatt accepted and signed the contract. Mr. McLemore paid down $1,500.00 as earnest money. The contract expressly referred to the fact that parcel No. 2 was covered by a lease in favor of the DX Sunray Oil Company and further provided as follows:

"Paragraph 12 of said lease grants to the lessee a 30 day option from date of notice to lessee to purchase parcel no. 2 on the same terms and at the same price as any bonafide offer for said premises received by lessor, and it is agreed that if said lessee exercises said option to purchase parcel no. 2 then this con-

tract shall in its entirety become null and void as between seller and purchaser herein and the earnest money shall be returned to the purchaser.

"It is understood between the parties hereto that the above mentioned lease grants to the lessee an easement over a part of the western part of parcel no. 1.

"It is further agreed that if said lessee does not exercise its said option to purchase, then both parcels are to be conveyed to the purchaser in one warranty deed, and the balance of deferred purchase money for both parcels shall be secured by one promissory note bearing interest at the rate of 6% per annum, payable monthly on an amortized basis over a period of 15 years and secured by one deed of trust. Said note and trust deed shall contain usual amortized note prepayment clause permitting payment after the current year."

Immediately after the execution of the sale contract with Mr. McLemore, Mrs. Glatt furnished a duplicate copy of the contract to the DX Sunray Oil Company in accordance with the provisions of the lease thereof. The Sunray Oil Company exercised its option to purchase under its lease agreement and paid to Mrs. Glatt the sum of $27,500.00 for parcel No. 2. Thereupon Mrs. Glatt exercised her right under the contract with McLemore to declare the contract a nullity, refused to convey either parcel of property to Mr. McLemore. His $1,500.00 earnest money was returned to him. Mrs. Glatt notified Mr. Slesinger that since the contract between her and McLemore had become null and void that she did not owe Mr. Slesinger anything for his services. Mr. Slesinger then brought suit in the Chancery Court as above set out.

The complainant offered no evidence other than his own testimony in support of his bill and the defendant did not take the stand nor did she offer any evidence to refute the testimony of the complainant or to impeach the complainant in any manner.

We copy a portion of the complainant's bill and the prayer thereon as follows:

"Your complainant further avers that prior to July 10, 1961, the defendant employed your complainant to find a purchaser for said properties; that your complainant did thereafter obtain a purchaser for said properties, which purchaser executed a contract dated July 10, 1961, here to the Court shown, a copy of which is attached hereto as Exhibit 'A', made a part hereof the same as if copied herein and the original will be produced at the hearing. The defendant accepted and executed said contract.

"Your complainant avers that he was the sole, efficient and producing cause of the purchaser executing the Contract aforesaid, and the said purchaser was ready, willing and able to purchase the property described therein. Your complainant avers that the defendant herein, for reasons suitable to her, failed and refused to consummate said transaction and has unlawfully and unjustly refused to pay your complainant the commission of 5% upon said sale to which he is rightly and justly entitled.

"WHEREFORE PREMISES CONSIDERED, YOUR COMPLAINANT PRAYS:

"(1) That proper process and copy issue and be served upon the defendant and that she be required

to answer this bill, not upon her oath, however, as her oath to the same is hereby expressly waived;

"(2) That upon the coming in of the answer or pro confesso duly taken against the defendant, that your complainant be awarded a decree against the defendant for the amount of $1800.00 or such other sum as the Court may deem is rightfully due him.

"Your complainant prays for such other and further relief to which he may be entitled.

"GLASCOCK, MILLER,
COLLIER & FIELD
By /s/ Palmer Miller
Charles Glascock
Solicitors for Complainant"

In our opinion the appellant, Mr. Slesinger, is entitled to recover a commission for his services under either of two theories. One, Mr. Slesinger expressly testified that there was an agreement between Mrs. Glatt and himself that if he procured a purchaser for the property that he would receive a commission. This testimony must be considered in light of the fact that both Mr. Slesinger and the owner, Mrs. Glatt, were fully cognizant of the fact that before Mrs. Glatt could sell parcel No. 2 to an outsider she must first submit the bona fide offer to purchase to the DX Sunray Oil Company for the exercise of its right to purchase or not to purchase the particular parcel of land under the same terms and provisions. Mrs. Glatt does not repudiate or deny the statement of Mr. Slesinger in any manner that there was an agreement that he should receive a commission.

Second, even if we assume as insisted by Mrs. Glatt that such an agreement referred to a commission in case Mrs. Glatt completed her contract to sell to a third person such as Mr. McLemore, we think that Mr. Slesinger still is entitled to recover under the principle of services rendered or quantum meruit.

The listing by Mrs. Glatt of the two parcels of land with Mr. Slesinger for sale was not in writing but by oral agreement. Both Mrs. Glatt and Mr. Slesinger well knew that before parcel No. 2 could be sold to an outsider Mrs. Glatt had to submit a written offer of purchase from such outsider to the DX Sunray Oil Company for its action on its option to purchase or not purchase said parcel of land. We think it very unreasonable to assume that Mr. Slesinger, a real estate agent, would accept said parcels for sale by him under an agreement or understanding that if the parcels were sold to an outsider he would receive a commission thereon but that if the DX Sunray Oil Company exercised its option to purchase parcel No. 2 under its lease agreement that Mr. Slesinger would not receive any commission therefor. Likewise, we think it very unreasonable that Mrs. Glatt would have expected Mr. Slesinger to list and procure a purchaser for the property under any such assumption, namely that he would be compensated only in the event the property was sold to a person or corporation other than the DX Sunray Oil Company.

Mr. Slesinger testified that Mrs. Glatt told him that she had talked to the officials of the Oil Company and they did not seem to be much interested in purchasing the property. However, it is significant to note that Mr. Slesinger and Mrs. Glatt did not proceed on the theory that the Oil Company would not purchase the property

because they expressly provided in the contract with Mr. McLemore that the contract would be void in the event the Sunray Oil Company exercised its right to purchase.

When the bona fide offer of Mr. McLemore to purchase the two parcels of property at a price acceptable to Mrs. Glatt was obtained by Mr. Slesinger in writing and accepted by Mrs. Glatt in writing the benefit of the services of Mr. Slesinger to Mrs. Glatt were completed. Mrs. Glatt then was in a position of being sure of selling the property either to the Sunray Oil Company or to Mr. McLemore at a price acceptable to her. Since Mrs. Glatt sold the property to the Sunray Oil Company at a price of $27,500.00 which was the price acceptable to her she benefited by the services of Mr. Slesinger as a real estate agent and she in equity and good conscience is obligated to pay Mr. Slesinger for his services.

From the case of Murray v. Grissim, 1956, 40 Tenn. App. 246, 290 S. W. (2d) 888, from the very scholarly opinion prepared by Judge Felts formerly of this court, now a member of the Tennessee Supreme Court, we quote as follows:

"From the mere rendering of such services by one and their acceptance by another, the law, without regard to the other's intent, will ordinarily raise a quasi contract on his part to pay the reasonable value of such services; or the circumstances may warrant the triers of fact in finding an implied promise or contract on his part to pay such value. 1 Williston, Contracts (Rev. Ed. 1936), secs, 3, 36, 91; Rest., Contracts, secs. 5, 72.

"While a contract (offer and acceptance) is usually expressed in words, it may be implied from

conduct. In such case the intention of the parties is a matter of inference from their conduct. Any conduct by one from which the other reasonably infers a promise in return for a requested act or promise amounts to an offer. Anson's Law of Contract (18th ed.—1937) p. 14; 1 Williston, Contracts, (rev. ed. 1936) sec. 36.

"These authors, Sir William Anson and Professor Williston, illustrate this principle thus:

" 'If A allows X to work for him under such circumstances that no reasonable man would suppose that X meant to do the work for nothing, A will be liable to pay for it. The doing of the work is the offer, the permission to do it, or the acquiescence in its being done constitutes the acceptance.' (Anson's Law of Contract, 18th ed. 1937) p. 14.

" '* * * The common illustration of this principle is where performance of work or services is requested. If the request is for performance as a favor, no offer to contract is made, and performance of the work or services will not create a contract; but if the request is made under such circumstances that a reasonable person would infer an intent to pay for them (and this is always a question of fact under all the circumstances of the case) the request amounts to an offer, and a contract is created by the performance of the work. And even though no request is made for the performance of work or service, if it is known that it is being rendered with the expectation of pay, the person benefited is liable' (1 Williston, Contracts, rev. ed. 1936. sec. 36)."

See also Cooksey v. Shanks, 1939, 23 Tenn. App. 595, 136 S. W. (2d) 57.

■ Defendant contends that the complainant is not entitled to recover under the principle of quantum meruit for the reason that the bill prayed for the recovery of the specific sum and did not pray for recovery under quantum meruit. With this contention we must respectfully disagree. Chancellor Gibson states the general rule as follows:

"If the complainant is not entitled to the specific relief he prays, he may, under the general prayer have such other relief as, on the pleadings and proof, he is fairly entitled to, provided it is not of a character to take the defendant by surprise. The relief under the general prayer must be such as follows, ordinarily and logically, from the pleadings and the proof."

Also from the case of Southern Housing Company v. Morton, 35 Tenn. App. 109, et seq. we quote from page 132, 242 S. W. (2d) 843, page 853 as follows:

" "* * * The power of a court of equity to grant relief under a general prayer where the equities demand it, is liberally regarded, but the Supreme Court has said that ' "the cardinal rule is, that the bill must not be so vague that the defendant may be surprised by a case that he could not be prepared to meet" '; and the ' "relief must be agreeable to the case made by the bill, and not different from it" '; 'it must not be either antagonistic to or altogether different from, that specifically prayed for'. Caldwell v. Huffstutter, 173 Tenn. 225, 116 S. W. (2d) 1017, 1019, and cases cited."

In our opinion Mrs. Glatt would be unjustly enriched to be permitted to retain the benefits of the services of Mr. Slesinger without paying a reasonable compensation therefor. Since Mrs Glatt elected not to sell the parcel No. 1 to Mr. McLemore we do not think it would be equitable for Mr. Slesinger to recover a compensation for obtaining a purchaser for this parcel.

■ This court knows from the experience in many cases before us that 5 percent is the usual and prevailing fee in Memphis, Tennessee, among reputable real estate agents and dealers for services of the type involved in this case. Mrs. Glatt had contracted to pay 5 percent on the sale to McLemore. We think it unnecessary to remand to determine a reasonable fee for the services of Mr. Slesinger in the present cause.

■ Therefore, the judgment of the court below will be reversed and a judgment will be entered in this court in favor of Mr. Slesinger against the defendant, Mrs. Glatt, in the amount of $1,375.00 which represents 5 per cent of the sale of parcel No. 2 to DX Sunray Oil Company at a price of $27,500.00. The defendant, Mrs. Glatt, will be taxed with the costs.

Avery, (P.J., W.S.), Bejach, J., concur.