RHODES v. JOHNSON et al.—222 S. W. (2d) 38.

Eastern Section.   February 26, 1949.

Petition for Certiorari denied by Supreme Court, July 9, 1949.

128

Moon & Anderson and John W. Dineen, Chattanooga, for appellant.

Wilkerson & Wilkerson, Chattanooga, for appellee Maude F. Johnson.

Fred M. Williams, Chattanooga, for appellee Helen Godfrey Smith.

HALE, J.

The bill in this cause was filed to recover damages from the defendant Maude F. Johnson, who had executed successive deeds to different parties for the same property, or, in the alternative, to have certain deeds held by her codefendants removed as clouds upon complainant's title. Complainant's suit was dismissed and he perfected the appeal.

As above indicated, the controversy grows out of the fact that defendant Maude F. Johnson executed different deeds to different parties for the same property, viz., Lot No. 14 in Block 12 Revised Plat of Hamilton Place in Hamilton County. And it illustrates the dangers of taking "short cuts" in the conveyancing of real estate.

The defendant Maude F. Johnson was the owner of about 75 unsold lots in the subdivision known as Hamilton Place. She employed one Bob White, a real estate operator who was not entirely orthodox in his methods, to sell the lots. From this record, Mr. White was not averse to making a quick dollar in the most convenient method. This was in 1940. For his services the aforesaid White was to receive lots in lieu of cash commissions plus certain "overages." He arranged a lottery or drawing for the lots which also involved an automobile. This was held about March, 1940, in the office of Felix Diamond in Chattanooga.

From this point we develop the conflicting conveyances, taking up first the chain of title leading to the defendants whose title is sought to be removed as a cloud on complainant's title.

This above-mentioned lottery was attended by Mr. Lawrence Godfrey, who at that time was either the principal or sole owner of a corporation known as the T. T.

Wilson Company. For this corporation he bought the lot in question, taking a deed therefor from Mrs. Johnson to the corporation. This deed was not recorded and apparently little if any effort was made to produce it in evidence. We think the Chancellor was correct in inferring that a valuable consideration was paid for it. The record is not clear as to whom the consideration was paid—whether Mrs. Johnson or her agent, White.

Mr. Godfrey became the sole owner of the stock in the T. T. Wilson Company, the grantee in the above-mentioned deed. The charter of this corporation was surrendered prior to his death and he became sole owner of the corporate assets. He died some time between December 1942, and June 1st, 1944, leaving a will devising all his estate to his wife Helen B. Godfrey (now Helen Godfrey Smith) who qualified as executrix and sold the T. T. Wilson Company to one McIsaac. The lot in question was not included in the inventory. Later the unrecorded deed therefor was discovered among the papers of Mr. Godfrey, but the legal title remained in the name of the corporation. It was then suggested that Mrs. Godfrey, the widow, ignore this deed, and take a new one to herself from Mrs. Johnson, the grantor, for the lot in question. So on June 1st, 1944, the defendant Mrs. Maude F. Johnson executed a deed with usual covenants and warranties to her co-defendant Helen B. Godfrey (Smith) for this lot, reciting a consideration of One Dollar and other valuable considerations.

This instrument was recorded June 5th, 1944.

Mrs. Helen Godfrey Smith conveyed this lot to A. B. Reeves and wife, Margie Reeves, on August 26th, 1947, by deed registered August 27th, 1947. This completes

this chain of conveyances, so it will be necessary to look at the title of complainant.

Some time prior to March 21st, 1940, the aforesaid Bob White approached the complainant Rhodes seeking to sell him five of these lots, among which was the one in controversy. In his direct examination Rhodes stated:

"I bought this lot from Bob White. Bob White was selling and I bought five of these lots in this same subdivision. The deed was signed, I understood that Bob White was selling these lots through for Mrs. Johnson. Of course, I never did know Mrs. Johnson. I never did see her, but I bought these lots from him to be sold for her. I have some of the deeds here. This is one of the pieces of property I have sold."

Later the following occurred:

"The Court: If counsel don't object to this question, the Court would like to ask Mr. Rhodes at this time and if there is any objection, of course the question will be withdrawn.

"Mr. Rhodes, did you know or understand that this lot or these lots at the time you acquired them from Mr. White had been turned over from Mrs. Johnson to him and were actually his lots?

"Mr. Rhodes: No, sir, I didn't know it, Your Honor. I just bought them straight out from Bob White. I didn't know how he come into possession of them.

"The Court: My question, is though, did you understand that they were Bob White's lots?

"Mr. Rhodes: He told me they were.

"The Court: They belonged to him?

"Mr. Rhodes: That's what he said, the ones he offered me for sale."

Rhodes paid White $350.00 cash for this lot. Approximately half was in cash and the remainder in wallpaper, etc., he furnished White. His bona fides in the case is not questioned.

So, on March 21st, 1940, the defendant Mrs. Maude F. Johnson executed a deed with general covenants and warranties to Mr. Rhodes for this particular lot. This deed was not recorded until June 28th, 1945. It also recites a consideration of One Dollar and "other valuable considerations."

Later and at sometime in the year 1947, Rhodes negotiated a sale of this property to Mr. A. B. Reeves, above mentioned, for $500.00, and executed deed therefor. It was then discovered that this property was covered by the prior registered deed from Mrs. Johnson to Mrs. Smith; consequently Rhodes and Reeves rescinded their trade by Reeves returning the deed and Rhodes repaying him the $500.00. Later, Reeves and wife then took a deed from Mrs. Helen Godfrey Smith, above mentioned, for this lot, paying $475.00 plus $25.00 for the title insurance.

The defendant appellee, Mrs. Maude F. Johnson, insists (a) That she was not the owner of the lot in question, in that it was allocated to White as a part of his commission; (b) that she received no part of the consideration; (c) that the complainant had superior title to Mrs. Helen Godfrey Smith, and having yielded to an inferior title is not entitled to recover.

The record is not clear as to who received the consideration for the conveyance made by Mrs. Johnson to the T. T. Wilson Company. The affairs of Mrs. Johnson and her agent, White, were inextricably mingled. It is clear that she received no part of the consideration paid

by Rhodes to White for the execution of the deed to Rhodes.

But is it clear that she received a consideration, namely, the services rendered by White to her in the sale of these lots?

We deduce that the deed made by Mrs. Johnson to the T. T. Wilson Company was first in point of time to that made to Rhodes. This is based upon the fact that the principal method of selling seemed to have been by the lottery before mentioned, and not by personal solicitation as in the case of the transaction with Rhodes. Further, the number of lots that White received as commission would depend upon the number of lots sold by him for Mrs. Johnson. So far as the record shows, a large number of persons participated in the drawing, while the only sale by personal solicitation was that involving Mr. Rhodes.

It seems to have been agreed that Mrs. Johnson would convey to the persons designated by White the lots due him. So far as the record shows, no specific lots were allotted to him. All were treated as being of the same value, and he would take certain ones, or the notes given therefor, as his compensation.

Therefore, we have this situation: Mrs. Johnson conveyed the lot in question to the T. T. Wilson Company. Soon thereafter she executed a conveyance for the same property to Rhodes. Was she at that time the owner of it? The deed to him covenanted, "I am lawfully seized and possessed of said real estate, have full power and lawful authority to sell the same; that the title is clear, free and unincumbered except by the taxes (for 1940) set out and assumed above, and I will forever warrant and defend the same against all lawful claims."

Apparently there was a breach of these covenants due to the prior conveyance to the T. T. Wilson Company.

■ But the bill is not framed for specific relief on this ground; to the contrary, the basis is that Mrs. Johnson, by the *subsequent* conveyance of this lot to Helen B. Godfrey (Smith) laid herself liable for the resulting damages to complainant. There is a prayer for general relief. However, in the answer of Helen Godfrey Smith she asserts the lot was owned by her deceased husband under "a warranty deed given by the defendant, Maude F. Johnson" etc. This rounded out or supplemented the issues raised by the bill, and supplied a complete history of the transaction so as to allow us, under the prayer for general relief, to adjust the equities of the parties. Bartee v. Tompkins, 36 Tenn. 623; Hutsell v. Bank, 166 Tenn. 598, at pages 612, 613, 64 S. W. 2d 188.

■ A covenant of seizin made by one who has no title, gives a right of action so soon as the covenant is made, and no eviction as in covenants of warranty is necessary. Ingram v. Morgan, 23 Tenn. 66, 40 Am. Dec. 626; Woods v. North, 25 Tenn. 309, 44 Am. Dec. 312; Kincaid v. Brittain, 37 Tenn. 119; Miller v. Bentley, 37 Tenn. 671; Park v. Cheek, 44 Tenn. 20; Curtis v. Brannon, 98 Tenn. 153, 38 S. W. 1073, 69 L. R. A. 760; Young v. Brannan, 5 Tenn. App. 1; Grant Bond & Mortgage Co. v. Ogle, 17 Tenn. App. 112, 65 S. W. 2d 1091; Pace v. Watson, 23 Tenn. App. 92, 126 S. W. 2d 404.

■ The measure of damages recoverable for a total breach of the covenant of seizin (in the absence of fraud) "cannot exceed the consideration, or the value of the land at the time of the sale as then agreed upon by the parties, or as determined by the price paid, with inter-

est.'' North v. Brittain, 154 Tenn. 661, at page 665, 291 S. W. 1071, 1072.

The amount paid by Rhodes was $350.00 in cash or its equivalent, which we hold to be the measure of damages. In view of the fact that complainant had or could have had the use of this lot until August 26th, 1947, that interest should be computed from that date.

Complainant claims to have paid certain taxes on this lot, but the amounts are not definitely established; no receipts are filed, altho the complainant testified he had them and could file them. It is true that in cases of this nature taxes may be recoverable, Grant Bond & Mortgage Co. v. Ogle, 17 Tenn. App. 112, 65 S. W. 2d 1091, but the burden is on complainant to establish the amount thereof. He had an opportunity to prove his claim and did not do so. We do not feel that the equities of the case require a remand and reference to allow the proof that should have been tendered when the cause was heard.

Mrs. Johnson, however, insists that she was merely the trustee for Bob White; that inasmuch as she received no part of the consideration paid by Rhodes to White, she is not liable. The Chancellor held this view and dismissed the suit.

In this we think he was in error. Mrs. Johnson received a consideration—the services rendered by White in selling the lots. If she made a mistake in conveying this lot to the T. T. Wilson Company and to Rhodes as well, it was *her* mistake. If she was victimized by White, it was by *her* agent. If she elected to carry out her agreement with White by conveying his lots to others, she became a party to it and her equities would be inferior to the purchaser who acted in good faith in

the matter. In short, it was *her* conduct that made it possible for Rhodes to suffer this loss, altho we absolve her from any actual fraud in the transaction, finding that she as well as Rhodes acted in good faith.

In Gibson's Suits in Chancery (3rd Ed.) at Sec. 52, in discussing the maxim ''Where one of two persons must suffer loss he should suffer whose act or neglect occasioned the loss,'' it is said the principle applies, also, to cases where an agent has been given apparent authority to sell goods, or do any act, and, taking advantage of his apparent authority, sells the goods, or does the act, in fraud of the principal's rights, and misapplies the proceeds, in which event the loss will fall on the principal.

As was said by our Supreme Court in Black v. Black, 185 Tenn. 23, at page 34, 202 S. W. 2d 659, 664, ''If each of the parties reposed trust or confidence in the wrongdoer, the loss must be borne by the one who trusted most.'' Citations could be multiplied.

The Chancellor's decree is reversed and decree here in favor of the complainant Rhodes against the defendant, Maude F. Johnson, for $350.00 plus interest from August 26th, 1947, and the costs of the cause below and on this appeal.

Reversed: decree for complainant.

McAmis and Howard, JJ., concur.