**Ruth L. BENNETT (Redmond), Plaintiff-Appellee,**

v.

**HOWARD JOHNSONS MOTOR LODGE, Zurich Insurance Company, and Insurance Company of North America, Defendants-Appellants and Defendant-Appellee.**

**ZURICH INSURANCE COMPANY, Cross-Claimant and Appellant,**

v.

**INSURANCE COMPANY OF NORTH AMERICA, Counter-Claim Defendant and Appellee.**

Supreme Court of Tennessee, at Knoxville.

July 28, 1986.

**274**

Steven B. Johnson, Knoxville, for defendants-appellants and defendant-appellee.

Herbert S. Moncier, Ann C. Short, Knoxville, for plaintiff-appellee.

Deke W. Brackett, James T. Shea, IV, Knoxville, for Ins. Co. of North America.

## OPINION

DROWOTA, Justice.

This Workers' Compensation case raises several issues, but it primarily concerns the apportionment of liability between two Workers' Compensation insurance carriers. The Plaintiff in this case has suffered two successive work-related injuries, the last of which totally and permanently disabled her. At all times relevant, she was employed by Defendant, Howard Johnsons Motor Lodge, as a waitress.

At the time of trial, Plaintiff was 55 years old. She has a ninth grade education, having left school at age sixteen to marry and raise a family. She has two children, the younger of whom was attending the University of Tennessee at the time of her most recent accident. Apart from being a homemaker, the only other work experience accumulated by Plaintiff has been as a waitress. Prior to the two injuries she suffered at work, she also had a

non-work-related neck problem in 1978, which was due to degenerative disc disease and which required Plaintiff to undergo a cervical fusion, resulting in a five (5) percent anatomical disability to the body as a whole. Nevertheless, she was able to work successfully as a waitress with this disability, having recovered from the cervical fusion.

Plaintiff's first work-related injury occurred on April 17, 1981 (the April/first injury), when she slipped on a wet surface and twisted her lower back, causing acute lumbar strain. She recovered over the course of about six months, receiving temporary total disability benefits for this injury, and was able to return to work and to perform her duties satisfactorily, despite some remnant limitations and occasional problems with her lower back. Plaintiff did not claim or receive any permanent partial disability benefits for this first work-related accident. Her temporary total disability benefits and medical expenses were paid by the Insurance Company of North America (INA), which carried Howard Johnsons Workers' Compensation policy at the time of this first injury.

Following her first work-related injury in April, 1981, Plaintiff returned to work at Howard Johnsons in late October or early November, 1981. Despite sporadic problems, she continued performing her job until March 4, 1982, when she sustained a second work-related injury, this time to her neck (the March/second injury). Having slipped on food waste on the kitchen floor, Plaintiff twisted her neck and upper back; she initially did not feel that the injury was serious and continued to work. Two weeks later, however, she found it necessary to go to the Fort Sanders Hospital Emergency Room and, on March 19, 1982, she saw Dr. J. MacDonald Burkhart, the orthopedic surgeon who had treated her for her previous injury to her lower back in 1981 and for her pre-existing neck condition in 1978. Dr. Burkhart diagnosed her March 4 injury as acute cervical strain. Between March 19 and June 9, 1982, Plaintiff consulted Dr. Burkhart five times, showing some improvement. On June 9, she experienced a

recurrence of her lower back problems as well as a relapse in her neck, requiring that she be hospitalized from June 10, 1982, until June 18, 1982, to treat both injuries.

Between the April, 1981, injury and the March, 1982, accident, Howard Johnsons had changed insurance carriers from INA to Zurich Insurance Company (Zurich). Nevertheless, while Zurich had been duly paying temporary total disability benefits subsequent to the March injury, INA mistakenly began paying temporary total disability benefits to Plaintiff as well from June 9, 1982, to October 20, 1982. INA paid these benefits because Plaintiff was hospitalized to treat her April lower back injury, although she was being treated for her recent neck injury at the same time. Consequently, Plaintiff received some $1,432.22 in overpayments during the period in which INA paid these redundant temporary total disability benefits.

During the next two years, Plaintiff was hospitalized a number of times for treatment of the March/second injury or, often, of both injuries. After her March, 1982, injury, Plaintiff was never again able to resume work. Prior to the March injury, although she had some limitations from her lower back problem, Plaintiff was able to perform her work, to do her chores at home, and otherwise to enjoy a relatively normal life. Subsequent to the March injury, she could no longer work as a waitress or assume her household responsibilities. She was in pain most of the time and could not stand, walk, or sit for extended periods. Additionally, she was unable to lift most objects without pain. She did not respond well to therapy and has been dependent on medication to provide what relief she has been able to obtain. She has also endured episodic headaches. She reached her maximum medical improvement in late July of 1984.

On April 7, 1983, Plaintiff initiated the instant Workers' Compensation action, basing her claim on the April, 1981, and March, 1982, injuries. On October 31, 1984, Zurich filed a cross-claim against

INA, seeking apportionment of the temporary total benefits and of the medical expenses paid on behalf of Plaintiff. The case was heard in the Chancery Court for Knox County on May 24, 1985. At trial, Plaintiff's younger son testified that before the March, 1982, injury, she was able to do most everything required around the house, including mowing the lawn and other relatively strenuous activities. She also continued to work as a waitress. After this second injury, however, her son noted a marked change in her capabilities and testified that little, if any, improvement in her condition has subsequently occurred. While she has better days and worse days, he described her typical day as one involving limited movement and apparently persistent pain.

Plaintiff testified that the only employment experience she has had outside the home has been as a waitress. She described her health and abilities before and after each of her successive injuries. She stated that, after her most recent accident, if she stood for more than about fifteen minutes, she would experience significant pain in her back. Although she conceded that following the April, 1981, injury, she was slightly less capable than she had been, she was still able to perform her work regularly, working up to 40 hours a week. She presently must take medication to get some relief from her condition. Plaintiff's daughter-in-law also testified, describing the same general problems about which Plaintiff and Plaintiff's son had testified.

In addition to her doctor, Plaintiff called a vocational rehabilitation counselor as an expert to testify regarding employment opportunities in the locale. This witness also described the rehabilitation process and stated that retraining and upgrading the education of a disabled person could take as long as three years. While this witness had never evaluated or interviewed Plaintiff personally, she testified that, based on a hypothetical incorporating the Plaintiff's situation, such a person would encounter substantial obstacles to obtaining employment, given her age, education, disability, skills, and in light of the competition of younger, more able persons in the labor market, particularly for jobs as a waitress.

Dr. Burkhart testified by deposition and, having treated Plaintiff since 1977, he gave a history of her injuries and treatment. He stated that she has shown slow progress in recovering from the two work-related injuries, placing a fifteen to twenty percent permanent disability to her body as a whole as a result of both injuries. This disability rating was in addition to her pre-existing five percent permanent disability due to her non-work-related neck problem dating from 1978. Although Dr. Burkhart considered the two work-related injuries as independent of each other, he could not determine whether the more recent neck injury aggravated her low back condition; he thought they were basically parallel but unrelated. Nevertheless, his medical opinion was that each injury contributed to her entire disability. The combination of the injuries led to the disability rating he attributed to Plaintiff. Dr. Burkhart's prognosis was that, while Plaintiff might be able to work as a waitress, she would continue to experience pain and that such work would put a strain on her neck and back; she could not lift any objects easily or without pain, especially those weighing over 25 pounds. Standing for long periods would tend to aggravate her condition as well.

When asked whether the Plaintiff's medical expenses could be allocated between her neck and lower back injuries, assuming each was independent of the other, Dr. Burkhart testified that such apportionment "would be difficult ... unless you just divide it in half." Reiterating that each injury contributed to her over-all disability, upon being pressed to give an opinion as to the allocation of medical expenses, Dr. Burkhart responded that "if you asked me to divide it and apportion it, I would apportion it half and half."

In his findings, Chancellor McDonald determined that Plaintiff's legal disability was 100 percent permanent to the body as

a whole. Recognizing that the two insurance carriers had contested their respective liabilities at trial, the Chancellor cited the Tennessee rule that an employer or insurance carrier takes the employee as he is found and thus the last employer or insurance company at the time of the accident is liable for the entire disability, regardless of the aggravation of a pre-existing condition. The trial court specifically found that Plaintiff had sufficiently recovered from her April, 1981, injury to work productively, and thus the March, 1982, accident caused the injury that rendered her totally and permanently disabled. The Chancellor then determined that Zurich would be liable for all permanent total disability benefits; however, he also concluded that the medical expenses should be apportioned between Zurich, which would be liable for the March/second injury expenses, and INA, which would pay for the April/first injury expenses. In addition, the Chancellor ordered that INA was to recover the $1,432.22 in temporary total benefit overpayments from Zurich. This amount would then be credited against Zurich's liability to Plaintiff. Subsequently, upon the motion of the Plaintiff and having found good cause, the Chancellor ordered that the periodic disability benefits be commuted to their present value and that Plaintiff receive the award in a lump sum. Following the entry of judgment in the Chancery Court, Zurich appealed.

Zurich argues as its first issue that the entire liability for Plaintiff's temporary and permanent total benefits should be apportioned along with the medical expenses, which the Chancellor did apportion. INA also raises the issue of whether any apportionment at all was proper under Tennessee law. We take these two issues together.

■ The rule in this State has been unchanged since *Baxter v. Smith*, 211 Tenn. 347, 364 S.W.2d 936 (1962). No apportionment of any kind is permitted by Tennessee law:

"'Where incapacity results from the combined effect of several distinct personal injuries, received during the successive periods of coverage of different insurers, the result is not an apportionment of responsibility nor responsibility on the part of either or any insurer at the election of the employee. The implication of the act is that only one of successive insurers is to make compensation for one and the same incapacity.... Where there have been several compensable injuries, received during the successive periods of coverage of different insurers, the subsequent incapacity must be compensated by the one which was the insurer at the time of the most recent injury that bore causal relation to the incapacity.'"

211 Tenn. at 359, 364 S.W.2d at 941 (citation omitted). This rule prohibiting apportionment applies as a matter of law whether or not the latest injury aggravates a pre-existing condition or injury of the employee. It is meant to prevent just the sort of litigation involved in this case. No amount of evidence regarding the susceptibility of the employee's medical expenses to apportionment will change this rule of law; it is not a question of fact for the trial court to determine in the first instance and the material evidence rule will not foreclose the correction of erroneous apportionment orders. *See Smith v. Norris*, 218 Tenn. 329, 403 S.W.2d 307 (1966).

In the *Baxter* case, Zurich has pointed to certain language that seems to imply that should the evidence supporting apportionment be sufficient, this Court might allow it, but the correct reading of that case is clear that "'if the "apportionment rule" ... is to be adopted in this state, it should be done by the Legislature and not by the courts....'" 211 Tenn. at 360, 364 S.W.2d at 942 (citation omitted). Not only is a formula for the proper allocation of liability a matter for legislative consideration, but this case itself reveals how arbitrary any *ad hoc* apportionment can be. Dr. Burkhart, when pressed to apportion the disability rating between Plaintiff's injuries, initially resisted, stating that it "would be difficult to do ... unless you just divided it

in half." Dr. Burkhart's opinion was that the combination of the two injuries disabled Plaintiff, although either taken alone would not seem so severe.

"The rule then in Tennessee is that the employer takes an employee as he finds him. He is liable for disability resulting from injuries sustained by an employee arising out of and in the course of his employment even though it aggravates a previous condition with resulting disability for greater than otherwise would have been the case."

211 Tenn. at 361, 364 S.W.2d at 942–943.

We see no reason to modify this rule now. That Plaintiff was working for the same employer, or that the second injury did not actually aggravate the first but rather combined with it to create the extent of incapacity, or that the employer has changed insurers between injuries, has no legal bearing on the conclusion of this Court "that the most recent injury causally related to the employment renders the employer at the time liable for full compensation for all of the resulting disability even though increased by aggravation of [or, as we here clarify, combination with] a previous condition of disease or injury of such employee." 211 Tenn. at 361–363, 364 S.W.2d at 943.

In this case, the first work-related injury to Plaintiff's lower back was not the permanently disabling accident; she had returned to work and was able to work with but few limitations following the April, 1981, incident. Only after the March, 1982, injury did Plaintiff suffer an accident that permanently prevented her from working. "So it is clear that the last employer *or insurance carrier* will be liable *in full* for any permanent disability resulting from the last of successive injuries under different employers *or insurance carriers.*" *The Globe Co., Inc. v. Hughes,* 223 Tenn. 37, 43, 442 S.W.2d 253, 255 (1969) (emphasis added). *See also Indiana Lumberman's Mutual Insurance Co. v. Ray,* 596 S.W.2d 816 (Tenn.1980). Both the employer and its insurance carrier take the employee as they find him at the time of the disabling accident. Plaintiff was compensated for permanent total disability, not because of her April, 1981, injury, but rather due to her last injury in 1982. " 'An insurer takes the employee in the condition in which it finds him, and becomes bound to compensate him according to the provisions of the act for incapacity resulting from any compensable personal injury received during the period covered by the policy.' " *Baxter, supra,* 211 Tenn. at 358, 364 S.W.2d at 941 (citation omitted).

Regardless of the fact that Plaintiff's April, 1981, injury combined with, but did not apparently aggravate, the March, 1982, injury to result in her entire disability, and despite testimony by Dr. Burkhart that the medical expenses could be apportioned between these injuries, "[i]f we comply with the averments ... and allow a recovery on a fifty-fifty basis then this might or might not serve equity. The futility of proper apportionment of liability for *separate injuries* or aggravation of pre-existing injuries is obvious and if applied would result in mere speculation by the Court." *Baxter, supra,* 211 Tenn. at 364, 364 S.W.2d at 944 (emphasis added). Further, we do not think it significant that Zurich is willing to assume more than a fifty-fifty share of the liability, as we do not see how this would in any way ameliorate the arbitrariness inherent in apportionment absent some legislative directive. Moreover, Dr. Burkhart's deposition testimony demonstrates that he was attempting to accommodate the insurance company's lawyer in apportioning the medical expenses between Plaintiff's injuries:

Q [Mr. Johnson:] Okay. Doctor, I think you have assigned a fifteen to twenty percent disability rating permanent to her body as a whole, is that correct?

A [Dr. Burkhart:] That's correct.

Q Is there any way that you can apportion that between the neck injury and the back injury if each were standing alone?

A It would be difficult to do so, unless you just divided it in half.

Q  Within a reasonable degree of medical certainty, do you feel like it should be divided in half?

A  As far as I'm concerned, as far as dividing it is concerned, it makes little or no difference. As far as the purposes you want to use it for, I'm sure it makes a great deal of difference. To the body as a whole I feel that her neck contributes about as much to her disability as her lower back does. Both of them bother her intermittently. And sometimes one is a little worse than the other. And it varies from time to time which one that is.

So, if you asked me to divide it and apportion it, I would apportion it half and half.

■ The rule in *Baxter* is clear and prevents this sort of speculation. No apportionment of any kind will be permitted in Tennessee unless the Legislature determines that such a remedy is appropriate. Absent some other rule of law to the contrary, the last successive employer *or* insurance carrier, taking the employee as he is found at the time of the accident, will be liable for the entire resulting disability, including all medical expenses arising from the disability and regardless of any pre-existing condition. This rule has been the law in Tennessee since *Baxter. See The Globe Co., Inc. v. Hughes, supra; Indiana Lumberman's Mutual Insurance Co. v. Ray, supra.* This rule applies whether the subsequent injury aggravates or merely combines with a previous injury or condition of the employee.

Zurich next argues that the trial court erred because it disregarded expert medical testimony regarding Plaintiff's incapacity and unduly focused on the testimony of a vocational rehabilitation counselor in determining the extent of Plaintiff's legal disability. "It should be noted there is a difference between the legal, and the medical, concepts of disability under workmen's compensation statutes; the one means inability to work or earn wages; and the other, inability in a physical or clinical sense...." *Redmond v. McMinn County,*

209 Tenn. 463, 468, 354 S.W.2d 435, 437 (1962). If the Chancellor had wholly ignored the testimony of this witness, he would have been amply supported by material evidence on this record to find that Plaintiff was totally and permanently disabled. "The trial judge was not bound to accept the doctors' opinions concerning the extent of the disability, but was entitled to determine from all the evidence, expert and nonexpert, the degree thereof." *A. C. Lawrence Leather Co. v. Loveday,* 224 Tenn. 317, 326, 455 S.W.2d 141, 144–145 (1970) (citations omitted). That a woman of Plaintiff's education, with her skills and training or experience, and in her physical condition would have tremendous disadvantages in obtaining employment of any kind, much less as a waitress, may clearly be inferred from the evidence on this record, whether or not the testimony of the vocational rehabilitation counselor had been credited.

"In determining the extent of a workman's disability from a job related injury, once permanent anatomical disability has been established by competent medical testimony, the trial judge must take into account other factors that have a bearing on the workman's ability to earn wages on the open market, such as skills, education, training, duration of disability, and job opportunities for the disabled."

*Employers-Commercial Union Companies v. Taylor,* 531 S.W.2d 104, 105 (Tenn. 1975) (citation omitted). *See also, e.g., Employers Insurance Co. of Alabama v. Heath,* 536 S.W.2d 341, 342–343 (Tenn. 1976); *Holder v. Liberty Mutual Insurance Co.,* 587 S.W.2d 372, 374 (Tenn.1979). Accordingly, we will not address the argument made by Zurich on the issue of whether the trial court improperly focused on the testimony of this witness.

As its next issue, Zurich contends that the Chancellor awarded Plaintiff permanent total disability benefits in excess of those authorized by T.C.A. § 50–6–207(4). In computing Plaintiff's compensation, Zurich makes the assumption that $50,890.00 represents the maximum amount of perma-

nent total benefits that Plaintiff may receive. From this figure, Zurich then deducts the temporary total benefits previously paid to Plaintiff. This assumption is not correct. Under T.C.A. § 50–6–205, an employee may receive no more than "fifty-four thousand four hundred dollars ($54,-400) in any case...." T.C.A. § 50–6–205(b). *See also* T.C.A. § 50–6–209(b)(3). This figure is thus the maximum amount that an employee may receive as a total of all compensation benefits, exclusive of medical and hospital expenses; it does not by its own terms purport to limit either temporary or permanent total disability benefits until this absolute maximum is reached. *See Bland Casket Co. v. Davenport,* 221 Tenn. 492, 506, 427 S.W.2d 839, 845 (1968). Therefore, the correct calculation of Plaintiff's benefits assumes that she may receive no more than the statutory maximum of $54,400.00 for all benefits except hospital and medical expenses. Such a construction of this provision is consistent with T.C.A. § 50–6–116, requiring that the Workers' Compensation statutes be construed "to the end that the objects and purposes of this chapter may be realized and attained."

■ The correct calculation of Plaintiff's benefits would be capped at the statutory maximum. Any amount in excess of the statutory maximum would be credited to Zurich. Plaintiff's compensation rate has been stipulated at $121.60 per week. She has a permanent total disability to the body as a whole, and her benefits are computed under T.C.A. § 50–6–207(4)(B), which section specifically reiterates that *"the total amount of compensation* payable hereunder shall not exceed fifty-four thousand four hundred dollars ($54,400)...." (emphasis added). As permanent total benefits, she is eligible for 400 weeks at

$121.60, which totals $48,640.00, plus 150 weeks at $15.00 per week, which equals $2,250.00, or $50,890.00 over 550 weeks. Since she has received $18,212.22 in temporary total benefits, this figure is added to the amount of her permanent total benefits, yielding $69,102.22, which exceeds the statutory maximum by $14,702.22. The excess is thus credited to Zurich, leaving net benefits due to Plaintiff in the amount of $36,187.78.[1] The trial court was, therefore, correct in its calculation of Plaintiff's benefits.

■ The last issue presented concerns the overpayment of temporary total benefits by INA to Plaintiff. Zurich argues that the Chancellor erred in holding Zurich liable to INA for the $1,432.22 that INA mistakenly paid between June 9, 1982, and October 20, 1982, because INA failed specifically to seek reimbursement of these payments from either Plaintiff or Zurich. We are of the opinion that the Chancellor acted properly in making such a ruling on this record. Not only would failure to reimburse INA leave Zurich unjustly enriched, since this sum was included in the calculation of Plaintiff's net benefits above,[2] but under *Baxter v. Smith, supra,* INA had no continuing liability to Plaintiff for her April/first injury because only the last of successive insurance carriers is liable for all disability payments. Furthermore, the proof at trial showed that INA had mistakenly made these payments to Plaintiff.

In its Answer to Zurich's Cross-Claim Complaint, by which Zurich sought apportionment of the temporary total benefits as well as the medical expenses between Zurich and INA, INA made a general prayer that its rights be adjudicated vis-a-vis Zurich's cross-claim. Under Rule 8, T.R.C.P.,

---

1. Plaintiff's compensation benefits have been commuted by the Chancellor to its present value and awarded as a lump sum. T.C.A. § 50–6–229. We note here that deducting any but the excess over the statutory maximum would result in deducting temporary total disability payments from permanent total disability benefits, which is not permitted. *See Jones v. Crenshaw,* 645 S.W.2d 238, 241 (Tenn.1983).

2. Zurich paid $16,780.00 in temporary total benefits to Plaintiff; INA paid $1,432.22 in temporary total benefits. The sum of these two figures, $18,212.22, was used to calculate the net benefits due to the Plaintiff by Zurich.

"[n]o technical forms of pleading ... are required," and "[a]ll pleadings shall be so construed as to do substantial justice." Rules 8.05, 8.06, Tenn. Rules of Civil Procedure. Precedent and practice have established that "a court of equity has the power and authority to make a decree based upon equitable principles in light of all the facts and circumstances involved." *Preston v. Smith,* 41 Tenn.App. 222, 245, 293 S.W.2d 51, 61 (1955), *affirmed* (Tenn.1956). While INA did not specifically request the reimbursement of these temporary total disability benefits in its Answer to the cross-claim, Zurich itself raised the issue concerning which insurance carrier, or both, should be liable for these benefits. The issue was tried and proof was adduced. " 'The power of a court of equity to grant relief under a general prayer where the equities demand it, is liberally regarded, but ... ' ' "the cardinal rule is, that the bill must not be so vague that the [party] may be surprised by a case that he could not be prepared to meet...." ' " *Connecticut Indemnity Co. v. DeGalleford,* 225 Tenn. 406, 412–413, 470 S.W.2d 5, 7–8 (1971) (citations omitted). The pleadings and the proof in this case clearly supported the Chancellor's decision, regardless of the lack of a specific request by INA to recover the benefits it paid by mistake. *See generally Southern Housing Co. v. Morton,* 35 Tenn.App. 109, 242 S.W.2d 843 (1950); *Farmers State Bank v. Jones,* 34 Tenn.App. 57, 232 S.W.2d 658 (1949), *rehearing denied* (1950); *Rhodes v. Johnson,* 32 Tenn.App. 127, 222 S.W.2d 38 (1949).

■ Finally, Plaintiff has suggested that this appeal should be considered frivolous under T.C.A. §§ 27–1–122 and 50–6–225(i). Since the errors appealed to this Court involved the misapplication of law, and considering that most of the issues presented raised genuine questions for the Court to resolve, we do not believe that the appeal was unfounded and thus decline to impose sanctions for a frivolous appeal.

Accordingly, we reverse the judgment of the trial court insofar as any apportionment of liability was ordered and hold that no apportionment of Workers' Compensation liability is permitted, absent legislative authorization, whether for disability benefits or medical and hospital expenses. In all other respects, the judgment of the Chancery Court for Knox County is affirmed. The costs are taxed to Zurich Insurance Company and Howard Johnsons Motor Lodge.

BROCK, C.J., and FONES, HARBISON and COOPER, JJ., concur.