**Sharon McCORMICK,**
**Plaintiff–Appellee,**

v.

**SNAPPY CAR RENTALS, INC., and**
**Continental Insurance Company,**
**Defendants–Appellants.**

Supreme Court of Tennessee,
at Knoxville.

March 11, 1991.

Robert Knolton, Lewis, King, Kreig & Waldrop, Knoxville, for defendants-appellants.

Edward M. Graves, Jr., Carl Winkles, Knoxville, for plaintiff-appellee.

## OPINION

DROWOTA, Justice.

This appeal involves a single worker's compensation action arising out of two separate, but successive, injuries to the Plaintiff. The sole issue on appeal concerns the liability of Snappy Car Rentals, Inc. ("Snappy") and its insuror, Defendants–Appellants, for 25% permanent partial disability to the body as a whole awarded to the employee, Sharon McCormick, Plaintiff–Appellee. Snappy was the employer of the Plaintiff at the time she sustained a compensable injury in 1985. Windshield Service Company, Inc., ("Windshield") was the Plaintiff's employer when she was injured a second time in March 1989. Defendants aver that the Chancellor erred in apportioning the disability award between two employers and carriers and/or treating the successive injuries as separate and distinct claims. The Chancellor ordered Snappy to pay 25% permanent partial disability to the body as a whole as a result of the first injury and Windshield to pay 55% permanent partial disability to the body as a whole after the second injury. We reverse and hold that the "last injurious injury rule" applies in this case and that no apportionment of worker's compensation benefits should have been made.

Sharon McCormick was age 41 at the time of trial, married, had no dependents, and had completed the 11th grade. Her work history consists primarily of sales work, automobile sales in particular. At the time of the first injury in March 1985, the Plaintiff was employed by Snappy as the general manager of its Knoxville office. Most of her work there centered on sales functions, particularly soliciting business from insurance companies, body shops, and hotels. When calling on a potential customer while in the course and scope of her employment, she stepped on the hem of her dress while attempting to exit an automobile and fell, injuring her cervical spine. She remained in intensive care for 11 days and underwent two surgical procedures. She was released to return to work without any restrictions in October 1985 by her neurosurgeon, Dr. Finelli.

The Plaintiff eventually left the employ of Snappy and after a series of jobs began to work for Windshield Service Company, Inc., in August 1987 as a sales representative. In March 1989, while in the course and scope of her employment, she injured her back, shoulders, and knees while trying to add oil to a company car. She returned to Dr. Finelli, the physician who had treated her for the previous injury, and once again began seeing a psychologist to enable her to better cope with the incessant pain. Dr. Finelli placed lifting restrictions on her after the second injury. She was eventually terminated by Windshield because she had falsified some time sheets.

The Plaintiff testified that the pain in her neck increased considerably after the second injury. According to Dr. Finelli, the

second injury caused a severe cervical strain. Referring to the impact of the second injury, Dr. Finelli stated that "she's had a broken neck, she's had a fusion, she's got some underlying problems with her neck, and this is probably just a reaggravation of the same type process." He gave a 25% to 35% anatomical impairment rating prior to the second injury and indicated that the second injury resulted in an additional 5% increase. It should be noted that Windshield hired the Plaintiff knowing of her prior work-related injury and surgical treatment.

A single lawsuit was initiated by the Plaintiff in May 1989 against both employers and their respective insurance carriers. Her complaint states in part: "Plaintiff brings suit for both injuries in one lawsuit in the interest of judicial economy and so that the court may properly apportion liability among the defendants." The trial court found in his memorandum opinion that a second injury occurred in March 1989 that was an aggravation of the first injury as opposed to "just a continuation of a normal result of the first injury." Windshield was held responsible for medical expenses occurring after the second injury. The Court, treating the matter as two separate cases, initially ruled that Snappy was responsible for paying 25% permanent partial disability benefits arising out of the first injury and Windshield was responsible for 30% permanent partial disability arising out of the second injury, concluding that the Plaintiff was 55% disabled to the body as a whole following the second injury. When the parties later sought clarification of the court's ruling, the Court stated that the "Plaintiff's *total* disability after the second accident was 55% and that her disability from her first accident with Snappy was 25% permanent partial disability to the body as a whole and that the Plaintiff does *not* now have a total disability of over 55%." (Emphasis added.) Yet in the same judgment purporting to provide clarification, the Court awarded a judgment against Snappy for 25% permanent partial disability and Windshield for 55% permanent partial disability, for a total of 80%.

■ Windshield has paid the judgment against it and is not a party to this appeal. Snappy maintains that the trial court apportioned the award between two successive employers in contravention of established precedent from this Court. The Plaintiff's contention is that there was no apportionment at all and that the trial court simply treated the litigation as two separate cases. It should be noted that neither party to this appeal disputes the trial court's finding that the second injury was an aggravation of the first nor do the parties question that Plaintiff's total disability after the second accident was 55%. Since these factual issues are not disputed, our review is simply one of law, without regard to the material evidence rule or a de novo standard of review. See *Mayes v. United States Fidelity & Guar. Co.*, 672 S.W.2d 773, 774 (Tenn.1984); *Cabe v. Union Carbide Corporation*, 644 S.W.2d 397, 398 (Tenn.1983).

■ Tennessee law does not provide for the apportionment of liability between successive employers or their insurance companies. *Bennett v. Howard Johnsons Motor Lodge*, 714 S.W.2d 273 (Tenn.1986); *Baxter v. Smith*, 211 Tenn. 347, 364 S.W.2d 936 (1962). In *Baxter*, the employee injured his back while working for one employer and some months later suffered another back injury, an aggravation of the previous one, while working for a second employer. The second employer sought contribution from the first employer on the basis that if both had been sued by the plaintiff, both would be jointly and severally liable for any resulting award of permanent partial disability. The claim advanced by the second employer was essentially that it would be unfair to impose full liability on subsequent employers while permitting prior ones to escape liability completely. In rejecting the second employer's contention, the "last injurious injury rule" was adopted by the Court in *Baxter*, wherein the rule was summarized as follows:

"The rule then in Tennessee is that an employer takes an employee as he finds him. He is liable for disability resulting from injuries sustained by an employee

arising out of and in the course of his employment even though it aggravates a previous condition with resulting disability far greater than otherwise would have been the case.

This rule seems to be almost identical with the Massachusetts–Michigan rule.... [1] It is the rule in Tennessee that there must be a causal connection between the employment and the resulting injury or that the most recent injury causally related to the employment renders the employer at that time liable for full compensation for all of the resulting disability even though increased by aggravation of a previous condition of disease or injury of such employee."

*Baxter,* 364 S.W.2d at 942–43.

The rule as adopted in *Baxter* was applied in *Bennett v. Howard Johnsons Motor Lodge,* 714 S.W.2d 273 (Tenn.1986). In *Bennett,* the employee suffered two successive work-related injuries, the last of which totally and permanently disabled her. The first injury resulted from a fall, causing injury to the lower back. She was able to return to work, despite some remnant limitations and occasional problems with the lower back. Subsequently, she fell a second time and twisted her neck and back. She was unable to work after the second fall. A physician testified that the two work-related injuries were independent of each other, and that he could not determine whether the more recent injury aggravated the prior one. In essence, he felt the injuries were basically parallel, but unrelated. Nevertheless, his medical opinion was that the second injury contributed to her entire disability. Adjudicating a dispute between different insurance companies that had covered the risk at the time of the injuries, this Court noted that no apportionment of any kind is permitted by Tennessee law.

"This rule prohibiting apportionment applies as a matter of law whether or not the latest injury aggravates a pre-existing condition or injury of the employee. It is meant to prevent just the sort of litigation involved in this case. No amount of evidence regarding the susceptibility of the employee's medical expenses to apportionment will change this rule of law." *Bennett,* 714 S.W.2d at 277.

Ultimately, the Court in *Bennett* held that the insuror covering the risk at the time of the second injury was responsible for the entire award of benefits, even though the second injury did not apparently aggravate the prior one. "[T]he last successive employer or insurance carrier, taking the employee as he is found at the time of the accident, will be liable for the entire resulting disability, including all medical expenses arising from the disability and regardless of any pre-existing condition.... This rule applies whether the subsequent injury aggravates or merely combines with a previous injury or condition of the employee." *Bennett,* 714 S.W.2d at 279.

■ Guided by the foregoing principles, we hold that the trial court erroneously held Snappy liable for 25% of the 55% award of permanent partial disability to the body as a whole. *Bennett* and *Baxter* present the situation of successive injuries, where, as in the present case, there has been no previous assessment or award of disability. Thus, the last injurious injury rule controls, imposing liability on the second employer, Windshield, for the entire award of 55% permanent impairment to the body as a whole. The record reflects that this judgment has been paid in full by Windshield. We reiterate the rule that the last employer or insurance carrier will be

---

1. The Massachusetts–Michigan rule alluded to by the Court in *Baxter,* was well stated in *Evans' Case,* 299 Mass. 435, 13 N.E.2d 27, 28–29 (Mass. 1938): "Where incapacity results from the combined effect of several distinct personal injuries, received during the successive periods of coverage of different insurers, the result is not an apportionment of responsibility nor responsibility on the part of either or any insurer at the election of the employee. The implication of the act is that only one of successive insurers is to make compensation for one and the same incapacity.... Where there have been several compensable injuries, received during the successive periods of coverage of different insurers, the subsequent incapacity must be compensated by the one which was the insurer at the time of the most recent injury that bore causal relation to the incapacity."

liable in full for any permanent disability resulting from the last of successive injuries taking place under different employers, provided, of course, the requisite causal relationship exists. This is true whether the subsequent injury aggravates a previous condition or merely combines with a prior injury, contributing to the total disability. The fact that the prior injury of the Plaintiff in this case remained unresolved at the time she filed suit against the second employer, makes this precisely the type of situation that brings into play our last successive injury rule. To hold otherwise, would result in courts being asked to undertake the exceedingly difficult task of speculating upon the amount of contribution or apportionment of injury sustained by employees in accidents while working for successive employers. It is exactly this evil that the Court sought to avoid when it adopted the last injurious injury rule in *Baxter*. "The futility of proper apportionment of liability for separate injuries or aggravation of pre-existing injuries is obvious and if applied would result in mere speculation by the courts." *Baxter* at 944.

Plaintiff asserts that the Chancellor did not attempt an apportionment, but rather treated the two injuries as two separate cases, requiring the first employer, Snappy, to pay 25% and the second employer, Windshield, to pay 55%. Plaintiff cites no authority, and we know of none, for the proposition that two separate worker's compensation cases involving successive injuries can be brought against different employers and carriers in a single worker's compensation action resulting in separate judgments. To avoid the result reached in this and other similar cases, separate worker's compensation suits must be filed for each injury in order to avoid the "last injurious injury rule."

For the foregoing reasons, the judgment against Snappy in the amount of 25% permanent partial disability to the body as a whole is reversed. The case is remanded for any further proceedings that may be necessary. Costs of this appeal are taxed to the Plaintiff.

O'BRIEN, DAUGHTREY and ANDERSON, JJ., and WADE, Special Justice, concur.