IN THE COURT OF APPEALS OF TENNESSEE
AT NASHVILLE
June 2000 Session

**JAMES JOHNSON v. SUMNER REGIONAL HEALTH SYSTEMS, INC., d/b/a SUMNER REGIONAL MEDICAL CENTER**

**Appeal from the Circuit Court for Sumner County**
**No. 19023-C     Arthur E. McClellan, Judge**

---

**No. M2000-00248-COA-R3-CV - Filed July 27, 2000**

---

James Johnson, as the next of kin and natural son of Belvia Johnson, appeals the trial court's final judgment dismissing his medical malpractice action against Appellee Sumner Regional Health Systems, Inc., d/b/a Sumner Regional Medical Center. Belvia Johnson (Decedent) sustained injuries when she fell off a gurney while being treated in the Medical Center's emergency room. After the Decedent's death several months later, James Johnson filed a medical malpractice complaint against the Medical Center in which he sought to recover for the "serious and permanent injuries, pain and suffering, medical expenses, and death" of the Decedent caused by her fall in the emergency room. The trial court entered summary judgment in favor of the Medical Center and dismissed Johnson's medical malpractice complaint based upon Johnson's concession that the record contained no evidence to support his claim that the Decedent's death was caused by the Medical Center's negligence. Our review of the record on appeal reveals that, although Johnson conceded that he lacked proof to support his wrongful death claim, Johnson did have proof to support his medical malpractice claim against the Medical Center. Specifically, the record contains evidence that, as a proximate result of the Medical Center's negligence, the Decedent suffered injuries that otherwise would not have occurred. Accordingly, we reverse the trial court's judgment of dismissal, and we remand this cause for further proceedings consistent with this opinion.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Reversed; and Remanded**

DAVID R. FARMER, J., delivered the opinion of the court, in which W. FRANK CRAWFORD, P.J., W.S., and ALAN E. HIGHERS, J., joined.

Joe Bednarz, Jr., Nashville, Tennessee, for the appellant, James Johnson.

Robert L. Trentham and William S. Walton, Nashville, Tennessee, for the appellee, Sumner Regional Health Systems, Inc., d/b/a Sumner Regional Medical Center.

**OPINION**

The evidentiary materials submitted in support of and opposition to the Medical Center's summary judgment motion revealed the following sequence of events. On December 22, 1997, the 77-year-old Decedent became dizzy and fell in the living room of the home she shared with Johnson. Johnson called an ambulance to transport the Decedent to the Medical Center's emergency room, and Johnson followed the ambulance by vehicle. A triage assessment record completed on the Decedent indicated that, upon her arrival at the emergency room, the Decedent complained of pain in her right arm and sacrum. The Decedent was treated by William Little, M.D., who ordered that side rails be used to restrain the Decedent due to her confusion, disorientation, and impaired judgment and decision-making ability.

Upon his arrival at the emergency room, Johnson went to the examination room where the Decedent was lying on a gurney. According to Johnson, Medical Center staff removed the Decedent from the examination room for a period of time when they took her to get x-rays. After the Decedent was returned to the examination room, Johnson remained in the room with the Decedent. In his deposition, Johnson testified that, by this time, the Decedent was uncommunicative and "a little bit out of it." Dr. Little's report indicated that the Decedent was slightly sedated as a result of medications administered to combat nausea.

Sometime in the early morning hours of December 23, 1997, a Medical Center technician entered the room and asked Johnson to step outside so that the technician could draw a blood sample from the Decedent. Shortly after he left the room, Johnson heard "a real loud flop." When Johnson returned to the examination room, he saw that the Decedent had fallen off the gurney onto the floor and was lying on her left side. Johnson blamed the fall on the fact that the technician had lowered the side rail on the gurney to draw the Decedent's blood. Dr. Little's report confirmed Johnson's account of the accident, indicating that the Decedent "accidentally fell off of the stretcher landing on the floor striking her left cheek and head" and that the accident occurred when the "[s]ide rail was down while lab personnel was in the room about to draw blood."

Dr. Little examined the Decedent after she fell off the gurney and reported that she was not seriously injured in the fall. A CAT scan revealed that the Decedent did not suffer any fractures or intracranial hemorrhage and that the Decedent sustained only a soft-tissue injury in the form of bruising and swelling on the left side of her face. Johnson confirmed the occurrence of this injury, testifying in his deposition that he observed bruising on the Decedent's left arm and cheekbone and around her left eye. Johnson testified that these bruises took more than a month to heal.

In addition to these injuries, x-rays taken at the Medical Center on December 23, 1997, revealed that the Decedent sustained a fracture of her right wrist. The Medical Center's records did not make clear whether these x-rays were taken before or after the Decedent fell off the gurney. In completing his emergency room report, Dr. Little did not mention any complaints of right arm pain, nor did he document any wrist or arm injury suffered by the Decedent.

The Decedent's regular physician, Sid King, treated the Decedent after she was admitted to the Medical Center for observation on December 23, 1997. Dr. King agreed that the Decedent

"apparently suffered some bruising" as a result of her fall off the gurney. In an affidavit, however, Dr. King opined that the Decedent did not sustain any permanent injuries as a result of this fall. This opinion was based, in part, on the emergency room triage assessment record, which indicated that the Decedent complained of pain in her sacrum and right arm upon her arrival at the emergency room.

Johnson disputed Dr. King's statement that the Decedent suffered no permanent injuries as a result of her fall off the gurney. In his deposition, Johnson acknowledged that it was possible that the Decedent fractured her wrist when she fell at home and not when she fell off the gurney. Johnson testified, however, that he did not remember the Decedent complaining of pain in her right arm until after she fell off the gurney. Johnson further testified that he was not informed of the Decedent's fractured wrist until after she fell off the gurney, and this information was provided a few days later by Dr. King, who did not treat the Decedent in the emergency room. Johnson stated that, after the Decedent fractured her wrist, she could not eat without assistance, and she did not fully recover the use of her right arm.

Approximately four months after her fall, the Decedent died from pneumonia. The death certificate listed the Decedent's underlying cause of death as chronic obstructive pulmonary disease (COPD), a condition from which the Decedent had suffered for more than ten years. In his affidavit, Dr. King opined that the Decedent's December 23, 1997, fall off the gurney did not cause or contribute to her death almost four months later. Johnson did not offer any evidence to contradict Dr. King's opinion as to the cause of the Decedent's death, other than to express his belief that the fall accelerated the general decline of the Decedent's health.

In moving for summary judgment, the Medical Center conceded that, as a result of falling off the gurney, the Decedent suffered a soft-tissue injury in the form of bruising. Nevertheless, the Medical Center insisted that it was entitled to summary judgment because the evidence failed to show that the Decedent suffered either permanent injury or death as a result of the fall.

In opposing the Medical Center's motion for summary judgment, Johnson submitted the affidavit of Jack R. Uhrig, a medical doctor who specialized in internal medicine. Dr. Uhrig opined that the nurse or technician who drew the Decedent's blood deviated from the applicable standard of care by failing to ensure that the side rails were up at all times or to take other precautions to ensure that the Decedent did not fall off the gurney. Dr. Uhrig also opined that this deviation caused the Decedent to fall off the gurney and to suffer injuries that she "otherwise would not have suffered."

At the hearing on the Medical Center's summary judgment motion, Johnson's counsel conceded that the record contained "no medical proof, or any other evidence which causally relates or otherwise supports any theory that the death of Belvia Johnson on April 19, 1998 was caused by [the Medical Center] or by any of the events alleged in the complaint." Citing the provisions of the

Medical Malpractice Act,[1] however, Johnson insisted that summary judgment was improper because the record contained evidence that the Decedent's fall off the gurney caused her to suffer "injuries that she would not otherwise have suffered." The trial court rejected this argument and, relying upon Johnson's concession at the hearing, granted the Medical Center's motion for summary judgment.

Summary judgment is appropriate only when the parties' "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Tenn. R. Civ. P. 56.04. In determining whether or not a genuine issue of material fact exists for purposes of summary judgment, the courts are required to consider the question in the same manner as a motion for directed verdict made at the close of the plaintiff's proof. *See Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993). That is, the trial court, and this court on appeal, "must take the strongest legitimate view of the evidence in favor of the nonmoving party, allow all reasonable inferences in favor of that party, and discard all countervailing evidence." *Id*. at 210-11.

This court has recognized that, as a general rule, a defendant moving for summary judgment may avail itself of two avenues: (1) the defendant "may negate an essential element of the nonmoving party's claim," or (2) the defendant "may establish an affirmative defense, such as the statute of limitations, that defeats the claim." *Allied Sound, Inc. v. Neely*, 909 S.W.2d 815, 820 (Tenn. Ct. App. 1995) (citing *Byrd v. Hall*, 847 S.W.2d at 215 n.5). In this case, the Medical Center sought to obtain a summary judgment by the first avenue, that of negating an essential element of Johnson's claim for medical malpractice. The trial court granted the Medical Center's motion for summary judgment because the court agreed that the record contained no evidence to support the causation element of Johnson's medical malpractice claim.

In a medical malpractice action, the plaintiff has the burden of proving that the defendant failed to act in accordance with the recognized standard of acceptable professional practice in the defendant's community. *See* Tenn. Code Ann. § 29-26-115(a)(1), (a)(2) (1980). In addition, the plaintiff is required to prove that, "[a]s a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred." Tenn. Code Ann. § 29-26-115(a)(3) (1980). This latter requirement describes the causation element of a medical malpractice claim.

After reviewing the evidentiary materials submitted at the summary judgment hearing, we conclude that the trial court's grant of summary judgment must be reversed. As conceded by Johnson at the hearing, the record contains no evidence to support his claim that the Medical Center staff's negligence caused or contributed to the Decedent's death in April 1998. To the contrary, the Medical Center presented evidence that there was no causal relationship between the Decedent's December 1997 fall off the gurney and the Decedent's April 1998 death, and Johnson submitted no proof to contradict this evidence.

---

[1] *See* Tenn. Code Ann. §§ 29-26-115 to -120 (1980).

-4-

Nevertheless, we reverse the summary judgment because we agree with Johnson's contention that the record does contain evidence to support his claim that, due to the Medical Center staff's negligence, the Decedent sustained "injuries which would not otherwise have occurred." Tenn. Code Ann. § 29-26-115(a)(3) (1980). Although the record does not make clear whether the Decedent fractured her wrist in the fall at her home or in the fall in the emergency room, the evidence was undisputed that the Decedent suffered a soft-tissue injury when she fell off the gurney. Moreover, the record indicated that the Decedent underwent additional diagnostic procedures as a result of her fall off the gurney, and the evidence does not reveal which party bore the expense of these additional tests.

In insisting that the trial court properly granted summary judgment in this case, the Medical Center contends that Johnson's complaint sought recovery only for the Decedent's death and "serious and permanent" injuries. The Medical Center argues that, inasmuch as the record contains no evidence that the Decedent suffered death or a "serious and permanent" injury as a result of her fall off the gurney, the trial court correctly granted the Medical Center's motion and dismissed Johnson's complaint.

We conclude that this argument lacks merit. Rule 8 of the Tennessee Rules of Civil Procedure provides that "[n]o technical forms of pleading . . . are required" and directs the courts of this state to construe all pleadings "so . . . as to do substantial justice." *Bennett v. Howard Johnsons Motor Lodge*, 714 S.W.2d 273, 281 (Tenn. 1986) (quoting Tenn. R. Civ. P. 8.05, 8.06); *accord Lamons v. Chamberlain*, 909 S.W.2d 795, 800 (Tenn. Ct. App. 1993); *Irvin v. City of Clarksville*, 767 S.W.2d 649, 652 (Tenn. Ct. App. 1988). In our view, the allegations of Johnson's complaint, whereby he sought to recover for the Decedent's "serious and permanent injuries, pain and suffering, [and] medical expenses," were sufficiently broad to cover the injuries suffered by the Decedent in this case, whether the injury consisted of a soft-tissue injury, which the Medical Center conceded was caused by the Decedent's fall off the gurney, or a fractured wrist, the cause of which the parties disputed.

In rejecting the Medical Center's argument that Johnson can recover only for the Decedent's permanent injuries, we observe that the provisions of the Medical Malpractice Act do not limit a plaintiff's recovery in this manner. As we previously indicated, the Act requires only that the plaintiff demonstrate that, "[a]s a proximate result of the defendant's negligent act or omission, the plaintiff suffered injuries which would not otherwise have occurred." Tenn. Code Ann. § 29-26-115(a)(3) (1980). The Act does not prevent a plaintiff from recovering damages for non-permanent injuries. *See id*.; *see also* Tenn. Code Ann. § 29-26-119 (1980) (providing that damages awarded in medical malpractice action "may include (in addition to other elements of damages authorized by law) actual economic losses suffered by the claimant by reason of the personal injury, including, but not limited to cost of reasonable and necessary medical care, rehabilitation services, and custodial care, loss of services and loss of earned income").

The trial court's judgment of dismissal is reversed, and this cause is remanded for further proceedings consistent with this opinion. Costs of this appeal are taxed to the appellee, Sumner

Regional Health Systems, Inc., d/b/a Sumner Regional Medical Center, and its surety, for which execution may issue if necessary.

 

 

                                          _____

                                          DAVID R. FARMER, JUDGE